**ESTATE OF Mary Edwards Helms PEA-COCK, Deceased, Executor Wilbur T. Edwards, Jr., Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 89–7771.

United States Court of Appeals, Eleventh Circuit.

Oct. 11, 1990.

Terry McElheny, C. Fred Daniels, Dominick, Fletcher, Yeilding, Wood & Lloyd, Birmingham, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., Cynthia M. Lewis, U.S. Dept. of Justice, Tax Div., Gary R. Allen, Chief, Janet Kay Jones, Howard M. Soloman, Ann B. Durmey, Appellate Section, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

ANDERSON, Circuit Judge:

This case presents the question of whether Mary Edwards Helms Peacock's will granted her husband, Theodore A. Peacock, an interest in her residence which qualified for the federal estate tax marital deduction. The relevant codicil to the will provides:

> I give, devise and bequeath to my residuary devisees and legatees ... my residence located at 1352 Willoughby Road, Birmingham, Jefferson County, Alabama, ... subject, however, to the right of my husband, Theodore A. Peacock, to occupy said property for as long as he desires. During the time my said husband occupies said property he shall pay the ad valorem taxes on said property and shall keep the same fully insured against fire and other perils, and in a reasonable state of repair.

R1–1, Exhibit A. After Mrs. Peacock's death, Mr. Peacock lived in the house until his death. Mrs. Peacock's estate claimed a marital deduction equal to the value of her residence; however, the Internal Revenue Service (the "IRS") disallowed the deduction. The estate filed a complaint in federal court requesting a refund of estate taxes with respect to a deduction for the value of the residence. The district court granted summary judgment in favor of the IRS, and the estate appeals.

Under 26 U.S.C. § 2056(b)(1),[1] a marital deduction is generally not allowed when the surviving spouse receives only a ter-

---

1. 26 U.S.C. § 2056(b)(1) provides, in pertinent part:

    (1) General rule.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

    (A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

    (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse....

minable interest in the property. The parties agree that Mr. Peacock's interest in the residence is a terminable interest under that statute. However, there are exceptions to the general rule. 26 U.S.C. § 2056(b)(7)[2] permits a marital deduction for qualified terminable interest property ("Q–TIP"). As set out in the footnote, the three requirements for a valid Q–TIP are that the property pass from the decedent, that the surviving spouse have a qualifying income interest for life in the property, and that the executor make an election to have the property treated as a Q–TIP. It is conceded that the first and third requirements were satisfied; only the second is in dispute in this case. Thus, the only question on appeal is whether Mr. Peacock's interest in the residence is a qualifying income interest for life under the statute. The primary argument made by the IRS is that the will gave Mr. Peacock only the right to physically live in the residence, and thus did not give him the right to all the income, i.e. rents, as required. We turn to state law to determine whether the instant will gave Mr. Peacock only the right to physically live in the house, or whether he also had the right to any rents.

We have uncovered no Alabama cases which consider whether a will's provision granting another the right to "occupy" a residence "for as long as [that person] desires" gives the beneficiary a right to the rents from the property for life. However, other states have construed similar bequests. In *Brinkley v. Day*, 88 N.C.App. 101, 362 S.E.2d 587 (1987), the North Carolina court interpreted a will which purported to grant the testator's residence to his son in fee simple and then provided that his wife had the right to occupy the apartment rent free. The lower court had held that the widow received only a license to occupy the residence. However, the court of appeals construed the will's provision as devising a life estate to the widow. Similarly, in *Trimble v. Holley*, 49 Tenn.App. 638, 358 S.W.2d 343 (1962), the court determined that the language, "Bert Holley is to have a home as long as he lives," established a life estate in Bert Holley.

However, other courts have made contrary determinations. In *Lewis v. Atkins*, 122 Ind.App. 618, 105 N.E.2d 183 (1952), a codicil of the testator's will stated that it was her wish that the testator's servants be allowed to "live" in particular areas for as long as they desire. On the facts of that case, the court held that the servants did not have a life estate. The court relied in part on the testator's precatory words, as opposed to mandatory language used elsewhere in the will.

In *Rogers v. Scagliotti*, 96 N.H. 134, 71 A.2d 407 (1950), the will provided that the testator's niece "shall have a home [in testator's homestead] as long as she pleases during her life without any rent." When the will was drafted, the niece did not have a life estate in the house; however, she lived there without paying rent. Therefore, the court held that the testator intended that the niece continue in the same situation that she had been in when the testator was alive.

In *Baldesberger v. Baldesberger*, 378 Pa. 113, 105 A.2d 713 (1954), the testator provided that his residence be kept as a home for all of his single children, and, on the

**2.** 26 U.S.C. § 2056(b)(7) provides, in pertinent part:

(7) Election with respect to life estate for surviving spouse.—

(A) In general.—In the case of qualified terminable interest property—

(i) for purposes of subsection (a), such property shall be treated as passing to the surviving spouse, and

(ii) for purposes of paragraph (1)(A), no part of such property shall be treated as passing to any person other than the surviving spouse.

(B) Qualified terminable interest property defined.—For purposes of this paragraph—

(i) In general.—The term "qualified terminable interest property" means property—

(I) which passes from the decedent,

(II) in which the surviving spouse has a qualifying income interest for life, and

(III) to which an election under this paragraph applies.

(ii) Qualifying income interest for life.—The surviving spouse has a qualifying income interest for life if—

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse...

death or marriage of his last single child, his youngest son would take the residence in fee simple. At the time of suit, the only remaining single child, a daughter, had set up a separate residence in a different town. The court held that the daughter had an incorporeal right, not a life estate.

■■■ Of course, while the above cases are helpful, all wills must be construed in their entirety in light of the testator's intent provided that intent is not contrary to law. *Snider v. Wood,* 531 So.2d 864, 866 (Ala.1988); *Tierce v. Macedonia United Methodist Church,* 519 So.2d 451, 454 (Ala. 1987). Therefore, interpretations of wills are always very case-specific. Mrs. Peacock's will provides that the furnishings of the house are owned by Mr. Peacock and are therefore not devised under her will. Her only devise to Mr. Peacock involves the provision in dispute. The rest of her property was left to her brother, niece, and nephew. We conclude that Mrs. Peacock's intention was to provide Mr. Peacock with a means to live out his life comfortably. She did not require that he physically live in the residence. If Mrs. Peacock had intended that Mr. Peacock forfeit his interest if he ceased physical occupation of the house, common sense dictates that such a requirement would have been included in the will. Instead, she provided that he had the *right* to occupy the residence for as long as he desired. Mrs. Peacock did not intend that, if Mr. Peacock needed to quit the residence for any reason—e.g., illness—he would not be entitled to the rents from the residence. We conclude that the testator's intention was to provide Mr. Peacock with a life estate in the house, to be used as he desired. Thus, Mr. Peacock was entitled to the rents from the residence.

The only other argument asserted by the IRS to support its position that the instant will does not create a qualifying income interest for life is based on the language "for as long as he desires." The IRS suggests that this language provides for termination prior to Mr. Peacock's death and thus conveys something less than a life estate. It is true that Mr. Peacock could voluntarily relinquish his interest before his death by expressing his "desire" to this effect. However, such a relinquishment is completely dependent upon the will of Mr. Peacock, and does not differ from any life estate which can be renounced or gifted before death. *See Disley v. Disley,* 30 R.I. 366, 75 A. 481 (1910) (holding under similar circumstances that a life estate was created because any termination sooner than death was dependent solely on the will of the life tenant, and rejecting any argument that the grant was not a life estate because it could terminate prior to death); *see also Smith v. Smith,* 219 Ark. 304, 241 S.W.2d 113 (1951); *but see Ray v. Ashburn Bank,* 212 Ga. 37, 89 S.E.2d 889 (1955).

Applying Alabama law and looking to the intention of the testator, we conclude that Mrs. Peacock intended that Mr. Peacock should have a degree of beneficial enjoyment of the property equivalent to a life estate. We therefore conclude that Mr. Peacock was given a qualifying income interest for life.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded to the district court with instructions to enter judgment for the estate.

REVERSED and REMANDED.