## FREDERICK v. BAXTER ARMS CORPORATION et al.

### No. 56.

Circuit Court of Appeals, Second Circuit.

Nov. 6, 1939.

Sydney Krause, of New York City (Martin H. Young and Hyman Gold, both of New York City, on the brief), for plaintiff-appellant.

William N. Tobin, of New York City, for defendants-appellees.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, as trustee in bankruptcy of Elizabeth Bunge, attacks her transfer, prior to her bankruptcy, of the Baxter Arms Apartment House to the Baxter Arms Corporation. This appeal must fail unless we hold to be "clearly erroneous" the finding of the court below that the money with which she originally purchased the property in question was not her own, but actually belonged to her mother and brother. Federal Rule of Civil Procedure 53(e) (2), 28 U.S.C.A. following section 723c. We think such a holding by us is not justified, and hence the decree dismissing the complaint must be affirmed.

Elizabeth Bunge owned stock in the Elmhurst National Bank, which was closed at the time of the bank holiday in 1933. On November 2, 1933, she made the transfer now attacked. Later, in 1934, demand was made upon her for payment of an assessment on her stock; and judgment for such assessment, in the amount of $1,672.78, was recovered against her by the bank's receiver in 1936. A month after its recovery she filed a voluntary petition in bankruptcy, listing the receiver's claim as her only indebtedness and asserting that she was possessed of no property; on July 10, 1936, she received her discharge as a bankrupt; and on July 23, 1936, the case was closed without the appointment of a trustee. Thereafter the receiver of the bank sold various choses in action of the bank, including the judgment against this defendant. In 1938, an assignee thereof procured the reopening of the bankruptcy proceedings and the appointment of the plaintiff as trustee to prosecute this action. Much of the argument herein, as well as of the opinion of the judge below, centered upon the plaintiff's right to bring this suit under the circumstances. In our view of the case discussion of this point is unnecessary.

The plaintiff claims that the conveyance in 1933 was fraudulent because made to avoid the contingent obligation to the bank, of which the defendant Elizabeth Bunge then was on notice. Concededly it was without consideration. Her explanation was that she was planning to go abroad to get married, and was urged by her family to divest herself of title to the property which she held in trust for her mother and brother, whose money had financed its purchase. She transferred the real estate to a specially organized corporation, the stock of which was held by her mother and brother, except for director's qualifying shares given to her. The case therefore turns upon discovering whether Elizabeth or her mother and brother were the beneficial owners of the funds with which Elizabeth originally purchased the property in 1930.

The plaintiff offered Elizabeth as a witness, and she was extensively examined by counsel for both sides and by the court. Almost the entire record consists of her testimony, produced by the plaintiff, and not controverted except as plaintiff endeavors to point out its inherent improbability and inconsistency. Her story in effect was that in 1922 her father, an invalid afflicted with arthritis, intended to divide assets of $15,000 he then had among her mother, her younger brother (then aged 15), and herself. Whatever additional moneys and mortgages he had over this sum were to go to the mother. But as Elizabeth had been educated in this country and her parents had confidence in her, all of the family's modest fortunes were placed in her name—$5,000 to be held for her brother, $5,000 for herself, and all the rest to be held for the benefit of her mother. The father died in 1923. She had assisted the father and mother in their delicatessen business and, after his death, assisted her mother in its conduct until she went to work for herself as a waitress at a lunch counter, earning between $16 and

$18 a week. In 1927, she was induced to invest her share, namely, $5,000, in stock of a corporation holding title to the property occupied by the Elmhurst National Bank. She was later induced to exchange that stock for the bank stock which eventually became a liability against her. When the bank failed she lost her $5,000 and also all of the small sum of money she herself had been able to save. The Baxter Arms Apartment House was purchased in 1930 with the shares of her father's estate which she held for her mother and brother.

This story is not unworthy of belief, and the district judge was entitled to accept it, as he did. Argument is now made that this explanation would account for but $10,000 of the purchase money of the apartment house, and that as additional consideration Elizabeth also transferred an amount of about $1,200 in cash and the equity in certain real estate, referred to as the Laurel Hill property. This equity had an indicated worth, according to the purchase agreement, of about $3,500. The court made no separate findings as to this part of the consideration. Nor did the plaintiff, in the course of his otherwise extensive questioning, examine the defendant Elizabeth on this point. Apparently the matter was not raised below, or the record would have been more explicit upon it.

We think, however, that the general finding, that the "funds and securities" in question were not the property of Elizabeth, but were the property of her mother and brother, is adequate to include these items also. There is evidence that the mother had the beneficial interest in funds other than her share of the $15,000; that the father intended all other "moneys and mortgages" for her; that she conducted the delicatessen business after his death; and that she purchased the Laurel Hill property sometime after her husband's death, taking title in her daughter's name. As to the $1,200 in cash, the real estate broker who arranged the purchase of the apartment house testified that he loaned the balance necessary to complete the payments, and that the loan was later repaid, presumably from the income of the apartment house. Under these circumstances we do not feel called upon to set aside the conclusion of the court below that the property transferred by Elizabeth Bunge to the Baxter Arms Corporation "belonged in equity and good conscience to her mother and brother."

Affirmed.